IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
February 4, 2021 Session

## THOMAS A. BUCKLEY INDIVIDUALLY AND DERIVATIVELY ON BEHALF OF TLC OF FRANKLIN, INC. v. GROVER C. CARLOCK, JR. ET AL.

Appeal from the Chancery Court for Williamson County
No. 46310    Joseph A. Woodruff, Chancellor

_____

### No. M2019-02294-COA-R3-CV

_____

A minority shareholder in a close corporation brought a shareholder oppression claim. The trial court heard the claim in two phases. After the first phase, the trial court found that there was shareholder oppression by the majority shareholder and determined that redemption of the minority shareholder's shares was the appropriate remedy. After the second, the court found the fair value of the minority shareholder's shares. The court later awarded attorney's fees to the minority shareholder, but it failed to award fees associated with the second phase of trial. The court also denied the minority shareholder's request for prejudgment interest and dismissed an unjust enrichment claim. On appeal, the minority shareholder takes issue with the court's fair-value determination. He also claims that he was entitled to prejudgment interest, as well as attorney's fees for both phases of trial. And he argues that the court erred in dismissing his unjust enrichment claim. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed**

W. NEAL MCBRAYER, J., delivered the opinion of the court, in which ANDY D. BENNETT and ARNOLD B. GOLDIN, JJ., joined.

Eugene N. Bulso, Jr., Nicholas D. Bulso, and Paul J. Krog, Brentwood, Tennessee, for the appellant, Thomas A. Buckley.

James D. Duckworth, Germantown, Tennessee, and Laura L. Deakins, Memphis, Tennessee, for the appellees, Grover C. Carlock, Jr., and Carlock Management Company, Inc.

# OPINION

## I.

### A.

TLC of Franklin, Inc., an "ultra-high-end" car dealership in Williamson County, Tennessee, is a close corporation. At its formation, Thomas Buckley owned 25% of the company's shares, which he bought for $375,000. He also served as TLC's general manager.

In 2014, Grover Carlock acquired 75% of TLC from other shareholders for $10,578,087.85. A few months later, Mr. Buckley reduced his stake in the company. He sold 5% of the company's shares to Luke Bryan for $700,000. This left the company with three shareholders: Mr. Carlock, Mr. Buckley, and Mr. Bryan.

After Mr. Carlock acquired his majority stake, Mr. Buckley remained general manager. Mr. Buckley also served on the board of directors and as an officer of the company. At first, the two worked cooperatively. But, over time, the business relationship soured.

Mr. Buckley complained that Mr. Carlock treated TLC as his own and gave no regard to the rights or interests of the other shareholders. Mr. Carlock never held shareholder or director meetings, which were required by TLC's bylaws. And he entered into various transactions on behalf of TLC that benefitted either Mr. Carlock or an entity in which he held an interest. Among those transactions was an increase in management fees paid by TLC to Carlock Management Company, Inc., a corporation wholly owned by Mr. Carlock.

### B.

Mr. Buckley sued Mr. Carlock and Carlock Management Company (collectively, "Defendants"), seeking to dissolve TLC. As grounds, Mr. Buckley claimed that Mr. Carlock "employ[ed] oppressive and fraudulent acts to squeeze out [Mr. Buckley]." *See* Tenn. Code Ann. § 48-24-301(2)(B) (2019) (allowing a court to dissolve a corporation if "those in control . . . have acted . . . in a manner that is illegal, oppressive, or fraudulent"). He also claimed that Mr. Carlock had wasted TLC's assets. *See id.* § 48-24-301(2)(D) (allowing a court to dissolve a corporation if "[t]he corporate assets are being misapplied or wasted"). And he accused Mr. Carlock of usurping TLC's corporate opportunities, engaging in self-dealing transactions on behalf of TLC, and breaching his fiduciary duty to TLC.

2

In addition to seeking TLC's dissolution, Mr. Buckley brought causes of action for promissory fraud, conversion, and unjust enrichment. He sought damages against Defendants, as well as an injunction unwinding the self-dealing transactions. Mr. Buckley also sought attorney's fees and prejudgment interest.

After a bench trial, the court found that Mr. Carlock's actions were "oppressive of Mr. Buckley's rights as a minority shareholder." But dissolution of the company would have been "too extreme" of a remedy. At trial, Mr. Buckley abandoned dissolution as a form of relief and instead requested redemption of his shares. The court found that redemption was "the more appropriate remedy."

Although Mr. Buckley had given his opinion of the fair value of his shares in TLC, the court found that opinion unreliable. And the record was otherwise insufficient for the court to determine fair value. So the court conducted another hearing at which it heard valuation expert testimony.

Adam Lawyer testified for Mr. Buckley. Mr. Lawyer considered the three valuation methods—market, income, and asset—and selected a "market" approach. He employed three methodologies. The first two were based on the "current industry market indicator" or "blue-sky" method. Mr. Lawyer described the method as using a blue-sky multiple to account for all intangible value of the dealership, including goodwill and, more importantly, franchise value.

In the first methodology, the blue-sky multiple was multiplied by normalized earnings. To arrive at normalized earnings, revenues of TLC from 2015 and 2016 were multiplied by a "normalization factor" to estimate expected profitability going forward under normal conditions. Mr. Lawyer used a normalization factor of 5%, which came from the "range of normal earnings from [other] ultra-high-end franchises." Relative to those other franchises, Mr. Lawyer expected TLC's normalized earnings to be between 4% and 6%. He "simply selected the midpoint at 5%."

Mr. Lawyer then multiplied the normalized earnings by a blue-sky multiple of eight. He arrived at that figure based on his experience in ultra-high-end dealership transactions and automotive dealership publications. Based on those publications, "premium luxury" dealerships show blue-sky multiples between about seven and nine. And, in Mr. Lawyer's experience, ultra-high-end dealerships were "a step above that." So, in Mr. Lawyer's opinion, a blue-sky multiple of eight "certainly seem[ed] reasonable." After multiplying normalized earnings by the blue-sky multiplier, Mr. Lawyer added in TLC's adjusted net assets.

The second methodology was similar to the first. It also involved multiplying normalized earnings by a blue-sky multiple of eight and adding in adjusted net assets. But,

3

instead of using normalized earnings, Mr. Lawyer used projected revenues from an investment presentation prepared by management.

The third methodology was based on prior TLC stock transactions. Mr. Lawyer analyzed Mr. Carlock's purchase of 75% of TLC and Mr. Bryan's purchase of 5% of TLC. Mr. Lawyer excluded Mr. Buckley's initial purchase of 25% of TLC, reasoning that the purchase was "an option-based purchase at a previously agreed-upon price." So, according to Mr. Lawyer, Mr. Buckley's purchase did not reflect TLC's fair value.

To arrive at a value of Mr. Buckley's shares, Mr. Lawyer tabulated a weighted average from each methodology. He opined that the value of Mr. Buckley's shares was $3.3 million.

Scott Womack testified for Mr. Carlock. Mr. Womack used an income approach. In determining TLC's profitability, Mr. Womack used a normalization factor of 1.5% instead of 5%. That figure, he explained, was more in line with TLC's actual performance. It was also supported by his experience in performing valuations and other information.

For TLC's intangible value, Mr. Womack used a blue-sky multiple of 7.5. But he admitted that Mr. Lawyer's blue-sky multiple of eight was still "within the range of reason." Mr. Womack did not add in TLC's assets to his calculation. In his view, to do so would have been "double counting." An income approach assumes that the assets contribute to earnings. That is, the value of the assets is shown by the company's earnings. Mr. Womack ultimately valued Mr. Buckley's 20% interest in TLC at $1,092,000.

The trial court accepted Mr. Lawyer's blue-sky approach with normalized earnings. But the court found Mr. Lawyer's normalization factor too high and Mr. Womack's too low. Both experts testified that a compilation of data from the National Auto Dealers Association was authoritative and reliable. From this compilation, the court determined that normalization factors of 2.9% and 2.8% for 2015 and 2016 revenues, respectively, were appropriate. The court also determined that Mr. Lawyer's blue-sky multiple of eight was appropriate.

On including adjusted net assets in the valuation, the court added one-half of the adjusted net asset value. In doing so, the court arrived at a value of $1,745,489.50 for Mr. Buckley's 20% share of TLC. Because a "punctilious method" of arriving at fair value "[wa]s not required," the court rounded the amount to $1,745,500.

In a later order, the trial court denied Mr. Buckley's request for prejudgment interest. But the court granted his request for attorney's fees. *See id.* § 48-24-302(d) (2019) (allowing a court to award a party "its reasonable costs, including attorney fees, if it finds for such party" in a proceeding for judicial dissolution). The court found that Mr. Buckley was the prevailing party in one of two "phases" of the case. He prevailed in the first phase

4

where he proved shareholder oppression. But he did not prevail in the second phase because the court's valuation of his interest in TLC was closer to the value offered by Mr. Carlock. So the court awarded Mr. Buckley his reasonable attorney's fees only for the first phase. And it found Mr. Buckley's remaining claims moot.

Mr. Carlock filed a motion to alter or amend the trial court's order. Among other things, he claimed that he was entitled to attorney's fees for successfully arguing a motion to compel discovery. The trial court found that Mr. Carlock had waived the issue.

## II.

Because this was a bench trial, our review is de novo on the record with a presumption that the trial court's factual findings are correct, unless the evidence preponderates against those findings. TENN. R. APP. P. 13(d). Evidence preponderates against a finding of fact if the evidence "support[s] another finding of fact with greater convincing effect." *Rawlings v. John Hancock Mut. Life Ins. Co.*, 78 S.W.3d 291, 296 (Tenn. Ct. App. 2001). We give great deference to the trial court's credibility assessments. *See Watson v. Watson*, 309 S.W.3d 483, 490 (Tenn. Ct. App. 2009). We do not disturb "factual findings based on witness credibility unless clear and convincing evidence supports a different finding." *Coleman Mgmt., Inc. v. Meyer*, 304 S.W.3d 340, 348 (Tenn. Ct. App. 2009). We review the trial court's conclusions of law de novo with no presumption of correctness. *Kaplan v. Bugalla*, 188 S.W.3d 632, 635 (Tenn. 2006).

On appeal, Mr. Buckley argues that the trial court's valuation of his interest in TLC was "erroneous as a matter of law, or at least contrary to the weight of the evidence." He also claims that the court abused its discretion in denying him prejudgment interest. And he contends that he was entitled to attorney's fees as the prevailing party for the whole case. Lastly, he argues that the trial court erred in dismissing his claim for unjust enrichment as moot.[1]

For their part, Defendants argue that the trial court abused its discretion in holding a separate valuation phase of trial. They also claim that the court erred in admitting a witness's deposition into evidence. And they argue that they did not waive their issue as to attorney's fees for the motion to compel. Finally, both parties request attorney's fees on appeal.

## A.

In Defendants' view, the court should have dismissed Mr. Buckley's claim after he failed to prove damages in the first phase of the trial. We conclude that Defendants waived

---

[1] Mr. Buckley also raised an issue about the timeliness of his appeal. But at oral argument, Defendants conceded that timeliness was not an issue.

this issue. A party waives an issue if it is "responsible for [the] error." TENN. R. APP. P. 36(a). We do not permit a party to "'take advantage of errors which he himself committed, or invited, or induced the trial court to commit.'" *Godbee v. Dimick*, 213 S.W.3d 865, 897 (Tenn. Ct. App. 2006) (quoting *Norris v. Richards*, 246 S.W.2d 81, 85 (Tenn. 1952)). Here, after the liability phase of trial, Defendants suggested that "both sides get their own experts" for a damages hearing. They cannot now complain of the very procedure they suggested.

Even if Defendants did not waive the issue, a trial judge has discretion "in directing the course of a trial." *Bellisomi v. Kenny*, 206 S.W.2d 787, 788 (Tenn. 1947). Thus, bifurcation of the issues is "left to the sound discretion of the trial judge." *See Ennix v. Clay*, 703 S.W.2d 137, 139 (Tenn. 1986). And there is no "formal requirement" that a party move for bifurcation before the start of trial. *Lamar Advert. Co. v. By-Pass Partners*, 313 S.W.3d 779, 789 (Tenn. Ct. App. 2009). Instead, a trial court may bifurcate the issues of liability and damages "at the virtual close of plaintiff's proofs." *Id.* (quoting *Saxion v. Titan-C Mfg., Inc.*, 86 F.3d 553, 556 (6th Cir. 1996)). Even "after a party has announced that proof is closed," a court has discretion to permit additional proof. *Simpson v. Frontier Cmty. Credit Union*, 810 S.W.2d 147, 149 (Tenn. 1991).

In what became the first phase of trial, Mr. Buckley abandoned judicial dissolution of TLC as a remedy. In his opening statement, he requested the redemption of his shares. But, during the first phase, he only offered his own opinion on the value of his shares, which the court rejected as unreliable. In the words of the court, this created a "hole in the proof."

The court did not abuse its discretion in holding a second phase of trial to "fill the hole." Ordering dissolution instead would have been a "drastic measure." *Cochran v. L.V.R. & R.C., Inc.*, No. M2004-01382-COA-R3-CV, 2005 WL 2217067, at *6 (Tenn. Ct. App. Sept. 12, 2005). And the court gave each side the opportunity to put on proof of the value of Mr. Buckley's shares. Defendants were not prejudiced by the second phase of trial. *See Ennix*, 703 S.W.2d at 139 (explaining that bifurcation requires looking to "the risk of prejudice to either party").

B.

During the first phase of trial, the court admitted a witness's deposition into evidence. A witness's deposition may be admitted into evidence if the witness is unavailable to testify. *See* TENN. R. EVID. 804(b)(1), cmt. Defendants argue that the witness was not unavailable, as the trial court found. Generally, we review a trial court's decision on the admissibility of evidence only for an abuse of discretion. *State v. Davis*, 466 S.W.3d 49, 61 (Tenn. 2015). This includes decisions on whether a witness was unavailable. *See Hicks v. State*, 490 S.W.2d 174, 179 (Tenn. Crim. App. 1972).

6

Under these circumstances, the trial court did not abuse its discretion. The court found that the parties had agreed that Defendants would call the witness. Mr. Buckley planned to question the witness when Defendants called her. But Defendants then declined to call the witness. Because the witness was not at the courthouse for Mr. Buckley to call her, the court declared the witness unavailable. It determined that Mr. Buckley was "unfairly surprised" by Defendants' decision not to call the witness.

C.

In forcing the redemption of Mr. Buckley's shares, the court essentially awarded him the same remedy that is available to a dissenting shareholder, which is "the fair value of the shareholder's shares."[2] Tenn. Code Ann. § 48-23-102(a) (2019). Mr. Buckley claims that the question of fair value is a question of fact. Although true, determining a company's fair value "is generally left to the discretion of the courts." *Athlon Sports Commc'ns, Inc. v. Duggan*, 549 S.W.3d 107, 120 (Tenn. 2018) (citation omitted); *see Elk Yarn Mills v. 514 Shares of Common Stock of Elk Yarn Mills Inc.*, 742 S.W.2d 638, 640 (Tenn. Ct. App. 1987) (explaining that, with share valuation, "much is left to the discretion of the evaluator").

A trial court abuses its discretion if it (1) applies an incorrect legal standard, (2) reaches an illogical or unreasonable decision, or (3) bases its decision on a clearly erroneous assessment of the evidence. *Lee Med., Inc. v. Beecher*, 312 S.W.3d 515, 524 (Tenn. 2010). A court's decision need only be "within the range of acceptable alternative dispositions." *Harmon v. Hickman Cmty. Healthcare Servs., Inc.*, 594 S.W.3d 297, 305 (Tenn. 2020) (citation omitted).

Fair value is "the shareholder's proportionate interest in the business valued as a going concern." *Raley v. Brinkman*, 621 S.W.3d 208, 237-38 (Tenn. Ct. App. 2020). It may be proven "by any techniques or methods which are generally considered acceptable in the financial community and otherwise admissible in court." *Athlon Sports Commc'n, Inc.*, 549 S.W.3d at 126 (quoting *Weinberger v. UOP, Inc.*, 457 A.2d 701, 713 (Del. 1983)).

Fair value "is not the same as fair market value," which is "'the price at which property would change hands between a willing buyer and a willing seller when neither party is under an obligation to act.'" *Id.* at 119 (quoting *Pueblo Bancorporation v. Lindoe, Inc.*, 63 P.3d 353, 362 (Colo. 2003)). Like a dissenting shareholder—or LLC member whose interest is subject to a forced buyout—a minority shareholder forcing the

---

[2] In a proceeding brought under Tennessee Code Annotated § 48-24-301, the court "may enter a decree dissolving the corporation" if grounds for dissolution are shown. Tenn. Code Ann. § 48-24-304(a) (2019). But dissolution is not required. The court may award an alternative remedy, including "requiring the corporation or a majority of its stockholders to purchase the stock of the minority stockholders at a . . . fair and reasonable price." *Cochran*, 2005 WL 2217067, at *6.

redemption of his shares "is an unwilling seller with little or no bargaining power." *See id.* (citation omitted); *see also Raley*, 621 S.W.3d at 237. And fair value requires that a "shareholder[] be fairly compensated, which may or may not equate with the market's judgment about the stock's value." *Athlon Sports Commc'n, Inc.*, 549 S.W.3d at 119 (citation omitted). There may not even be a market, and thus no market value, where a close corporation is at issue. *See id.*; *see also Raley*, 621 S.W.3d at 237 (reasoning that a close corporation "is privately owned, and thus, the market is often irrelevant")

Here, the trial court accepted a valuation methodology from Mr. Lawyer that is considered acceptable in the financial community. Authoritative automotive publications endorse the blue-sky approach. And it is used in the "great majority" of ultra-high-end dealership transactions. The court also found the blue-sky method admissible and reliable. *See Payne v. CSX Transp., Inc.*, 467 S.W.3d 413, 454 (Tenn. 2015) (explaining that the trial court has discretion "to function as a 'gatekeeper' with regard to the admissibility of expert testimony"). Critically, the method was based on fair value, not fair market value, which Mr. Lawyer distinguished.

Still, Mr. Buckley claims that the trial court made three errors in its valuation of his shares. He argues that the normalization factors the court used "were arbitrary and not supported by the evidence." He also contends that the court "diluted the impact of the tangible assets" by only accounting for half of them. And he argues that the court "improperly disregarded" the evidence of prior sales.

The court derived its normalization factors from data from the National Auto Dealers Association. The compilation did not list profit margins for ultra-high-end dealerships. But the profit margins for import dealerships were 2.7% and 2.6% in 2015 and 2016, respectively. And the profit margins for luxury dealerships were 2.8% and 2.7% for those years. According to Mr. Lawyer, ultra-high-end dealerships are "a step above that." So, based on the data's pattern, the court extrapolated the data to arrive at normalization factors of 2.9% and 2.8%.

Mr. Buckley faults the court for disregarding Mr. Lawyer's testimony as to the normalization factors. In Mr. Buckley's view, that testimony was the only competent evidence of normalization. We disagree. The trial court gave credit to a data compilation that both experts testified was authoritative and reliable. And "the trier of fact is not bound to accept an expert witness's testimony as true." *Roach v. Dixie Gas Co.*, 371 S.W.3d 127, 150 (Tenn. Ct. App. 2011). Instead, it "may reject any expert testimony that it finds to be inconsistent with the credited evidence." *Id.* The court did exactly that when it selected normalization factors lower than those to which Mr. Lawyer testified.

As for the tangible assets, both experts agreed that, under the blue-sky method, adjusted net assets are appropriately added to the equation. But Mr. Womack testified that, under his income approach, adding adjusted net assets would be double counting. Despite

8

accepting the blue-sky method, the court accounted for only half of TLC's adjusted net assets.

Although it may have been appropriate to account for the full adjusted net asset value under the blue-sky method, valuation "is as much art as science." *Athlon Sports Commc'n, Inc.*, 549 S.W.3d at 123 (quoting *In re Appraisal of Dole Food Co.*, 114 A.3d 541, 553 n.7 (Del. Ch. 2014)). And a court's calculation of fair value need only be equitable. *See id.* at 125. The trial court, as factfinder, was entrusted with resolving the parties' "legitimate but competing expert opinions." *Brown v. Crown Equip. Corp.*, 181 S.W.3d 268, 275 (Tenn. 2005). Under the abuse of discretion standard, we will not "substitute [our] judgment for that of the trial court." *Gonsewski v. Gonsewski*, 350 S.W.3d 99, 105 (Tenn. 2011). Splitting the difference on the question of tangible assets was an acceptable and equitable disposition. *See Harmon*, 594 S.W.3d at 305; *Athlon Sports Commc'n, Inc.*, 549 S.W.3d at 125.

As for the evidence of prior sales, the trial court did not find Mr. Lawyer's testimony in this regard reliable. We will not disturb the court's credibility finding on this record. *See Wells v. Tenn. Bd. of Regents*, 9 S.W.3d 779, 783 (Tenn. 1999). The court was entitled to disregard the evidence. *See England v. Burns Stone Co.*, 874 S.W.2d 32, 38 (Tenn. Ct. App. 1993) (explaining that "the trier of fact may place whatever weight it chooses upon [expert] testimony").

Ultimately, the trial court used a valuation method that is generally acceptable in the financial community to equitably calculate Mr. Buckley's interest in TLC. The court did not abuse its discretion.

D.

The court also did not abuse its discretion in denying prejudgment interest on the value of Mr. Buckley's shares. Whether to award prejudgment interest "is within the sound discretion of the trial court." *Spencer v. A-1 Crane Serv., Inc.*, 880 S.W.2d 938, 944 (Tenn. 1994). The court's decision will not be disturbed on appeal "unless the record reveals a manifest and palpable abuse of discretion." *Otis v. Cambridge Mut. Fire Ins. Co.*, 850 S.W.2d 439, 446 (Tenn. 1992). The court "must decide whether the award of prejudgment interest is fair, given the particular circumstances of the case." *Myint v. Allstate Ins. Co.*, 970 S.W.2d 920, 927 (Tenn. 1998).

The "uncertainty of either the existence or amount of an obligation does not mandate a denial of prejudgment interest." *Id.* at 928 (emphasis omitted). But prejudgment interest "is not allowed as a matter of right on unliquidated damages claims." *Uhlhorn v. Keltner*, 723 S.W.2d 131, 138 (Tenn. Ct. App. 1986).

9

Here, as the court reasoned, Mr. Buckley's claim for the redemption of his shares in TLC was for an uncertain, unliquidated amount. That alone makes the court's denial of prejudgment interest appropriate. *See Wasielewski v. K Mart Corp.*, 891 S.W.2d 916, 919 (Tenn. Ct. App. 1994) (finding no abuse of discretion in a denial of prejudgment interest "where the plaintiff's claim was for unliquidated damages sounding in tort"). But Mr. Buckley also delayed in bringing his claim for the redemption of his shares, seeking only the dissolution of TLC until the time of trial. So the court properly found that an award of prejudgment interest would have been unfair under the circumstances.

E.

After denying Mr. Buckley prejudgment interest, the trial court dismissed Mr. Buckley's unjust enrichment claim as moot. The court reasoned that awarding him the fair value of his shares fully compensated him. Mr. Buckley's claim was based on property that he searched for and located for TLC to purchase. Mr. Carlock instead purchased the property for himself and leased it to TLC. He did not compensate Mr. Buckley for locating the property. So Mr. Buckley claimed that Mr. Carlock was unjustly enriched by Mr. Buckley's uncompensated efforts in locating the property.

We agree with the trial court that awarding Mr. Buckley the fair value of his shares compensated him for Mr. Carlock's conduct with respect to the property. In his complaint, Mr. Buckley claimed that Mr. Carlock's purchase of the property for himself misappropriated a corporate opportunity of TLC. Mr. Buckley's unjust enrichment claim was an alternative theory for the same conduct.

The trial court found that Mr. Carlock did, in fact, misappropriate a corporate opportunity by purchasing the property for himself. That misappropriation contributed to the court's finding of shareholder oppression. Mr. Buckley was compensated for the oppression by receiving the fair value of his shares. To allow Mr. Buckley to proceed on his alternative theory of unjust enrichment would give rise to a double recovery, which is not permitted. *See Shahrdar v. Global Hous., Inc.*, 983 S.W.2d 230, 238 (Tenn. Ct. App. 1998) ("[I]f the damages claimed under each theory [of recovery] overlap, the [p]laintiff is only entitled to one recovery."); *Ford Motor Co. v. Taylor*, 446 S.W.2d 521, 530 (Tenn. Ct. App. 1969) ("[C]are should be exercised to avoid double recoveries by allowing the same damage twice under different designations.").

F.

We lastly address the attorney's fees awarded below and the parties' requests for attorney's fees on appeal, starting with the fees awarded to Mr. Buckley. A trial court enjoys "considerable discretion in determining a reasonable attorney's fee." *First Peoples Bank of Tenn. v. Hill*, 340 S.W.3d 398, 410 (Tenn. Ct. App. 2010). We will uphold the

10

court's decision absent an abuse of discretion. *Wright ex rel. Wright v. Wright*, 337 S.W.3d 166, 176 (Tenn. 2011).

In determining a reasonable fee, trial courts consider a number of factors, including those listed in Rule 1.5 of the Tennessee Rules of Professional Conduct. *See Lexon Ins. Co. v. Windhaven Shores, Inc.*, 601 S.W.3d 332, 342 (Tenn. Ct. App. 2019); TENN. SUP. CT. R. 8, RPC 1.5. But "ultimately the reasonableness of the fee must depend upon the particular circumstances of the individual case." *Wright ex rel. Wright*, 337 S.W.3d at 177 (quoting *White v. McBride*, 937 S.W.2d 796, 800 (Tenn. 1996)). There is "no fixed mathematical rule" for determining a reasonable attorney's fee. *Killingsworth v. Ted Russell Ford, Inc.*, 104 S.W.3d 530, 534 (Tenn. Ct. App. 2002).

Here, the trial court awarded Mr. Buckley his attorney's fees for the first phase of trial, but not the second, because Mr. Buckley was the prevailing party only as to the first phase. Mr. Buckley argues that he was the prevailing party as to the whole case. So he claims that he should have been awarded attorney's fees for both phases.

As Mr. Buckley points out, a party "need not attain complete success on the merits of a lawsuit in order to prevail." *Fannon v. City of LaFollette*, 329 S.W.3d 418, 431 (Tenn. 2010). Instead, a prevailing party "is one who has succeeded 'on any significant issue in litigation which achieves some of the benefit . . . sought in bringing suit.'" *Id.* (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)).

The trial court's use of the term "prevailing party" and description of Mr. Buckley as "not the prevailing party" in connection with the second phase of trial was inartful. But we conclude that the court was not treating the case as having two "different prevailing parties." Instead, we read the court's analysis as taking into consideration the reasonableness of the fee requested and the results obtained. *See Hensley*, 461 U.S. at 440 (recognizing that "where the plaintiff achieve[s] only limited success, the . . . court should award only that amount of fees that is reasonable in relation to the results obtained"); TENN. SUP. CT. R. 8, RPC 1.5(a)(4) (providing that "the results obtained" are relevant to "determining the reasonableness of a fee").

In that light, the court did not abuse its discretion in the fees awarded to Mr. Buckley. Mr. Buckley sought $3,300,000 for the value of his shares in TLC. The court awarded him $1,745,500. Although Mr. Buckley was the prevailing party, he only had limited success on the valuation question. *See Hensley*, 461 U.S. at 440; TENN. SUP. CT. R. 8, RPC 1.5(a)(4). Declining to award fees related to that phase of the litigation was not unreasonable.

The court also properly determined that Mr. Carlock waived his issue as to attorney's fees for his motion to compel. When the court granted the motion to compel, it took the issue of attorney's fees under advisement. And it stated that it would resolve the

11

issue in connection with a later fee-shifting determination. When the time to make that determination came, Mr. Carlock did not offer proof of the amount of his fees. Instead, when Mr. Buckley moved for attorney's fees, Mr. Carlock only opposed the request. The failure to raise the issue of attorney's fees when the court was making its fee-shifting decision constitutes waiver. *See* TENN. R. APP. P. 36(a).

Mr. Buckley requests attorney's fees on appeal under Tennessee Code Annotated § 48-24-302(d). Because he did not prevail in his appeal, we decline to award him his fees. Mr. Carlock, who seeks an award of attorney's fees as damages for a frivolous appeal, is not entitled to fees. *See* Tenn. Code Ann. § 27-1-122 (2017). The statute authorizing an award of damages for a frivolous appeal "must be interpreted and applied strictly so as to not discourage legitimate appeals." *Davis v. Gulf Ins. Grp.*, 546 S.W.2d 583, 586 (Tenn. 1977). A frivolous appeal is one "utterly devoid of merit." *Combustion Eng'g, Inc. v. Kennedy*, 562 S.W.2d 202, 205 (Tenn. 1978). Mr. Buckley's appeal was not devoid of merit. He "made legitimate arguments and cited to relevant law and facts." *See Coolidge v. Keene*, 614 S.W.3d 106, 120 (Tenn. Ct. App. 2020). Although his appeal was unsuccessful, it was not frivolous. *See id.*

## III.

We affirm the trial court's judgment. Mr. Carlock waived his challenge to the trial court holding a second phase of trial, as well as his claim for attorney's fees for his motion to compel. In the first phase of trial, the court did not err in admitting the witness deposition into evidence. And, in the second phase, the court did not err in its calculation of the fair value of Mr. Buckley's interest in TLC. The court also did not abuse its discretion in denying Mr. Buckley prejudgment interest or in awarding him attorney's fees. Nor did the court err in dismissing his unjust enrichment claim. We deny the parties' requests for attorney's fees on appeal.

        s/ W. Neal McBrayer
        W. NEAL MCBRAYER, JUDGE